UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| THERON BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-CV-219-RBC |
| | ) | |
| DARRELL HIMELICK, Sheriff, | ) | |
| JASON DAVIS, and CODY HARLAN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

Theron Bailey, a prisoner currently confined at the Wabash Valley Correctional Facility, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 dealing with events that occurred at the Grant County Jail while he was held there as a pretrial detainee. The Court screened the complaint pursuant to 28 U.S.C. § 1915A, granted Bailey leave to proceed against Deputy Sheriffs Jason Davis and Cody Harlan in their personal capacities for damages on his claim that they did not deliver mail entrusted to them, and dismissed Sheriff Darrell Himelick and all other claims. (Docket # 7.) Bailey subsequently sought leave to amend his complaint to add an official capacity claim against Grant County and Sheriff Himelick. The Court denied the request to add Grant County as a defendant, but granted Bailey leave to proceed against Sheriff Himelick in his official capacity. (Docket # 28.)

The Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the question of whether Bailey exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). The motion has been fully briefed. (Docket ## 36, 43, 46.)

For the following reasons, the Defendants' motion for summary judgment will be DENIED.

## II. FACTUAL BACKGROUND[1]

According to the Complaint, Attorney Don Galloway represented Bailey on his criminal charges. Bailey alleges that he sent two letters to Galloway while he was confined at the Grant County Jail, one of which contained a list of potential witnesses, but that his attorney never received either letter. (Docket # 1 at 4.) Bailey asserts that he obtained a jail mail log, which he "thought, at that time, showed that Deputy Harlan (#1013) and Deputy Davis (#1017) had received letters from my attorney that I never received." (*Id.*) He says that he "filed a grievance asking Sheriff Himelick to look in to the matter and/or give me these letters from my attorney but he never did." (*Id.*) Bailey alleges that on the day of his trial, Galloway said "he never got the letter (containing the list of witnesses) and it was too late to call any witnesses. I then realized the mail log actually showed that the deputies failed to deliver the letters I had sent to Galloway." (*Id.*)

In support of their summary judgment motion, the Defendants submit the affidavit of Jail Commander Cathy Lee, the Jail Policies and Procedures portion of the Grant County Jail manual dealing with grievances, as well as copies of all of the grievances Bailey filed while he was confined at the Grant County Jail. In response, Bailey submits his own declaration.

The parties' submissions establish that Bailey was admitted to the Grant County Jail on March 3, 2007, and remained there until he was transferred to the Indiana Department of Correction on October 3, 2008. (Docket ## 37-1 ¶ 4 and 45 ¶ 3.) The parties agree that the Grant

---

[1] For summary judgment purposes, the facts are recited in the light most favorable to Bailey, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

County Jail had a grievance policy in effect while Bailey was at the jail, which read in pertinent part as follows:

> C. <u>Procedures for Complaints</u>
>
> 1. Procedure for complaints or request (sic) must be in writing:
>    a) To a jail officer. If not taken care of then to:
>    b) Jail Commander
>    c) Captain
>    d) Chief Deputy
>    e) Sheriff

(Docket # 37-2 at 1.)

According to Grant County Jail records, Bailey filed ten grievances while he was at the jail. (Docket # 37-3.) One grievance, dated August 5, 2008, deals with mail. In this grievance, Bailey stated that:

> I got a copy of my incoming mail log and it shows that on 5-7-07 Don Galloway sent me some mail and it was sent back by 1013? The same thing happened on 5-19-07 by 1017?
> I go to trial on my A felony's (sic) on 8-18-08 and I feel like I should have gotten all mail from my attorney am I correct? I plan on showing this mail log to [my] attorney and Judge so I can get more time to prepar (sic) for trial. I also would like to know who 1013 + 1017 are so I can appologize (sic) to them if I have done something wrong or stay in my room when they work this floor.

(Docket # 37-3 at 6.)[2]

Jail Commander Cathy Lee reviewed this grievance, and on August 13, 2008, she responded to the grievance that "I would have to speak to these officers to know what happen[ed]." (Docket # 37-3 at 6.) According to her affidavit, she spoke to the officers referred to in the grievance, but they "had no recollection of mail sent to Bailey." (Docket # 37-1 ¶ 10.) In her affidavit, she does not state whether or not she passed this information on to Bailey, and in

---

[2] The numbers referenced in the grievance appear to refer to the badge numbers of various jail employees.

his memorandum in opposition to summary judgment, Bailey states that "they never did." (Docket # 44 at 2.)

Ms. Lee states in her affidavit that Bailey did not pursue his grievance to the higher jail officials listed in the grievance policy. (Docket # 37-1 ¶ 10.) In his declaration, Bailey states "[o]n May 26, 2010, I sent a letter of appeal to the chief deputy and on July 29, 2010, I sent a letter of appeal to Sheriff Himelick" (Docket # 45 ¶ 9), but that he "never received any response to my letters appealing my grievance which were all sent certified, the receipts of which are attached" to his declaration. (Docket # 45 ¶ 10.) These letters were both mailed after Bailey filed his § 1983 complaint.

### III.  STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Payne*, 337 F.3d at 770. At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

There are differences between how courts handle summary judgment motions directed at the merits, and summary judgment motions where the defendants contest exhaustion of administrative remedies based on § 1997e. In dealing with a merits based summary judgment motion, if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.  he court must avoid "the temptation to decide which party's version of the facts is more likely true," as

"summary judgment cannot be used to resolve swearing contests between litigants." *Id.* In exhaustion based summary judgment motions, however:

> The sequence to be followed in a case in which exhaustion is contested is . . . as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *cert denied* 129 S.Ct. 1620 (2009).

Under *Pavey*, in an exhaustion summary judgment motion, if the court concludes there are contested issues of material fact, the matter goes to an evidentiary hearing for the court to resolve those facts and determine whether the case should go forward for consideration on the merits.

## IV. DISCUSSION

The Defendants move for summary judgment, asserting that Bailey did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). "Exhaustion of

5

administrative remedies, as required by § 1997e, is a condition precedent to suit. Section 1997e applies to 'all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (quoting *Porter v. Nussle*, 534 U.S. 516, 122 (2002)). Although it does not deprive the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement requires dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler,* 221 F.3d 1030, 1034 (7th Cir. 2000).

"[T]he court must not proceed to render a substantive decision until it has first considered § 1997e(a). The statute gives prisons and their officials a valuable entitlement—the right *not* to face a decision on the merits—which the courts must respect if a defendant chooses to invoke it." *Perez*, 182 F.3d at 536 (emphasis in original). Where exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by the court before proceeding to the merits. *Pavey*, 544 F.3d at 741. Because the Defendants are the moving party, and because they bear the burden of proving the affirmative defense of lack of exhaustion, the court must "extract all reasonable inferences from the evidence in the light most favorable to" Bailey as the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The Defendants argue that "[t]here are no grievances from plaintiff's 2008 incarceration alleging any interference with, or non-receipt of, letters written by Theron Bailey to his attorney." (Docket # 36 at 3). They state that the only grievance dealing with mail is a grievance he filed on August 5, 2008, and that "[t]his grievance refers only to two letters which allegedly plaintiff's attorney had written to him." (*Id.*)

In his affidavit, and in his memorandum of law, Bailey argues that the grievance he filed

6

on August 5, 2008, "specifically mentions letters that were returned on May 7, 2008 and May 19, 2008. These letters were ones that Bailey had sent to his attorney but were returned to the jail as incoming mail, therefore the grievance is clearly about these letters as both outgoing and incoming mail." (Docket # 44 at 1.)

The parties agree that Bailey filed a grievance while he was at the jail dealing with mail, but they disagree over whether that grievance was sufficient to exhaust the claim he presents in his complaint. The Defendants contend that grievance did not assert the claim that Bailey presents in his complaint—Bailey argues that it does. The question before the Court is whether or not this grievance was sufficient to meet the requirement that Bailey exhaust his administrative remedies.

"The purpose of the exhaustion requirement is to allow prison officials the opportunity to correct their mistakes and resolve prisoners' complaints without judicial intervention." *Woodford v, Ngo*, 548 U.S. 81, 89 (2006). *See also Dole v. Chandler*, 438 F.3d 804, 808-809 (7th Cir. 2006) (stating that even where there is no available remedy a prisoner must still file a grievance because responding to his grievance might satisfy him and avoid litigation or the grievance could "alert prison authorities to an ongoing problem that they can correct"); *Perez*, 182 F.3d at 537-38 (explaining that exhaustion may serve the purpose of narrowing a dispute or avoiding the need for litigation).

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies

the contours of the controversy.

*Porter*, 534 U.S. at 525-26 (internal citations omitted).

The grievance Bailey filed on August 5, 2008, states in pertinent part "I got a copy of my incoming mail log and it shows that on 5-7-07 Don Galloway sent me some mail and it was sent back by 1013? The same thing happened on 5-19-07 by 1017?" (Docket # 37-3 at 6.) Thus, in this grievance, Bailey stated that when he reviewed his mail log he noticed problems with his mail, he identified specific dates the problems occurred, he cited the log book entries that suggested he had a problem, and he identified the staff members who appeared from the log book entries to be responsible for or have knowledge of the problem. This grievance contained all of the operative facts necessary to alert jail officials of a problem and allow them to investigate the problem and attempt to resolve it.

The United States Court of Appeals for the Seventh Circuit has held that "[w]hen the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. We stated that a grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Nelson v. Miller*, 570 F.3d 868, 876 n.4 (7th Cir. 2009) (citations and internal quotation marks omitted). The Court concludes that Bailey's grievance met the purposes of the exhaustion requirement because it presented a problem Bailey believed he was having with his mail, and provided the information necessary to investigate his problem.

As a second prong of their argument, the Defendants assert that Ms. Lee's response to Bailey's grievance "was never appealed during Bailey's incarceration." (Docket # 36 at 4.) They argue that Bailey did not exhaust his administrative remedies and that summary judgment must

8

therefore be granted in their favor.[3]

Exhaustion of administrative remedies is a condition precedent to suit in federal court. *Perez*, 182 F.3d at 335. Section 1997e(a) states that "(n)o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must 'file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Burrell v. Powers,* 431 F.3d. 282, 285 (7th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

A review of the record shows that although Bailey did not appeal his August 5, 2008, grievance, his failure to do so does not warrant a grant of summary judgment against him. Ms. Lee apparently reviewed Bailey's August 5, 2008, grievance on August 13, 2008, and added the following hand-written notation: "I would have to speak to those officers to know what happen[ed]." (Docket # 37-3 at 6.) In her affidavit, Ms. Lee states that she spoke to the officers involved and that they "had no recollection of mail sent to Bailey." (Docket #37-1 at 2.) She then claims that Bailey never appealed her response. (Docket #37-1 at 2.)

On the record before the Court, however, the Defendants have not met their burden of establishing the defense that Bailey failed to exhaust his administrative remedies. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 586. There is no evidence in the record that the outcome of Ms. Lee's "investigation", which occurred after her August 13, 2008, response, was ever conveyed to Bailey or that she, or any other prison official, ever actually discussed the August 5, 2008,

---

[3] The Grant County Jail grievance policy does not use the word "appeal," but it does require inmates to write to the more senior officials if their complaint or request has not been "taken care of" by the earlier responses. The Court concludes that this language establishes an appeal requirement even though it does not use the actual word.

9

grievance with Bailey. Indeed, since Lee's August 13, 2008, note can hardly be considered responsive, in effect Bailey's August 5th grievance was never actually answered. The legal effect of such unresponsiveness is that any purported administrative remedies are rendered unavailable – meaning that they cannot be exhausted. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding that prisoner was not required to exhaust administrative remedies because prison officials' failure to respond to numerous grievances made those remedies unavailable). *See also Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). "Prison officials may not take unfair advantage of the exhaustion requirement . . ., and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Because no one at the jail ever responded to Bailey's August 5, 2008, grievance, to notify him, for instance, that his complaint had "not [been] taken care of", there was nothing to appeal. The result of this ineluctable conclusion is, under *Pavey*, rather clear; Bailey's failure to exhaust was understandable and "innocent", and since he is no longer in the jail, it would serve no purpose for him to go through the grievance process now.

To summarize, Bailey's August 5, 2008, grievance was sufficient to alert the prison officials that there was some problem with his legal mail. Lee's response understandably left Bailey with the impression that she would talk to the confinement officers involved and advise him of what she had found, and while she did presumably talk to them at some point (the exact time-frame is unclear), she apparently never got back to Bailey with the results. Consequently, Bailey's failure to exhaust was not only innocent within the meaning of *Pavey*, the obligation to

appeal never actually arose. Stated somewhat differently, on this record it is not altogether clear what the Defendants are maintaining Bailey should have appealed. Accordingly, summary judgment must be denied to the Defendants.

## V.  CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (Docket # 35) is DENIED, and Bailey's case will proceed on the merits. This case is set for a telephone scheduling conference on January 20, 2011, at 10:00 a.m. The Court will initiate the call to the Plaintiff at his place of incarceration and to counsel for the Defendants.

SO ORDERED.

Entered December 27, 2010.

      /s/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge