UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| THERON BAILEY, | ) |  |
|---|---|---|
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) | CAUSE NO. 1:09-CV-219 |
| v. | ) |  |
|  | ) |  |
| DARRELL HIMELICK, et al., | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |

## OPINION AND ORDER

Plaintiff Theron Bailey, an inmate who is proceeding *pro se*, alleges in this 42 U.S.C. § 1983 suit that Defendants Grant County Sheriff Darrell Himelick and Grant County jail officers Jason Davis and Cody Harlan intentionally interfered with his legal mail, violating his right of access to the courts under the First Amendment.[1] (Docket # 1.) Defendants moved for summary judgment on December 15, 2011, and issued Bailey a notice of the motion in accordance with Local Rule 56-1(f). (Docket # 75, 78.) Bailey, however, has failed to file a response, and the time to do so has since passed.

### *A. Standard of Review*

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted notwithstanding a factual dispute between the parties, because "[o]nly

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 25.)

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

"Once a properly supported motion for summary judgment is made, the nonmoving party bears the burden to set forth specific facts showing that there is a genuine issue for trial." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 496 (7th Cir. 2011) (citation and internal quotation marks omitted). To determine whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

"Notably, any party asserting that a fact is or is not genuinely disputed must cite 'to particular evidence to support the fact.'" *Seng-Tiong Ho*, 648 F.3d at 496 (quoting FED. R. CIV. P. 56(c)(1)). "Thus, a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Id*. (citation and internal quotation marks omitted). Summary judgment is not appropriate if the Court must "choose between competing inferences," *Abdullahi v. City of Madison*, 423 F.3d 763, 770 (7th Cir. 2005), nor can the Court weigh the credibility of witnesses, since these are functions of a jury, *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006).

### B. Factual Background[2]

Bailey was admitted to the Grant County Jail on March 3, 2007, on charges of murder (shooting his girlfriend) and remained there until his release to the Department of Corrections on October 3, 2008. (Lee Aff. ¶ 4.) While at the jail, Bailey was housed on the second floor. (Davis Aff. ¶ 4; Lee Aff. ¶ 7.)

---

[2] As will be discussed *infra*, because Bailey failed to respond to Defendants' motion, the facts as articulated by Defendants are admitted to exist without controversy.

Attorney Don Gallaway was appointed by the court on March 6, 2007, to represent Bailey against the criminal charges. (Compl. 3.) Bailey contends that he talked with Gallaway only twice before his August 18, 2008, trial—first, when Bailey was arrested and, again, two weeks before trial. (Bailey Dep. 14-15.) At the second visit, where they met in-person, Bailey told Gallaway that he wanted to change his plea from not guilty to guilty by reason of insanity. (Bailey Dep. 33, 36-37, 42-43.) Apparently hearing this for the first time, Gallaway told him it was too late to do so.[3] (Bailey Dep. 42-43.)

At trial, Bailey testified that the shooting was accidental—that is, that he and his girlfriend were entering a restaurant and a door swung, hitting him in the arm in which he was carrying the gun, causing it to discharge. (Bailey Dep. 12-13, 33.) The issue of his purported mental imbalance was never raised in any proceeding (Bailey Dep. 62-63; Defs.' Designation of Evidence Exs. 13, 14), and a plea of insanity was never entered (Defs.' Designation of Evidence Ex. 15). Bailey was ultimately convicted of the charges. (Bailey Dep. 44; Defs' Designation of Evidence Ex. 15.)

In the instant litigation, Bailey contends that, at least three months before trial, he wrote Gallaway two letters from jail: one letter was about his desired change of plea and named eight potential witnesses who could testify about his mental state, and the other was about the events on the night of the shooting.[4] (Bailey Dep. 51-53.) Gallaway apparently never received these letters. (Bailey Dep. 53.) Bailey alleges that Defendants lost one of his letters to Gallaway on May 7,

---

[3] Although there were telephones available in his cell block to make collect calls, Bailey did not believe that Gallaway would accept a collect call; in fact, he cannot recall if he ever tried to place such a call to Gallaway. (Bailey Dep. 16-17; Lee Aff. ¶ 10.)

[4] Bailey states that his sister, who had power of attorney over him during the course of the criminal proceedings, also tried to talk with Gallaway about these eight potential witnesses but "got the run around." (Bailey Dep. 42.)

2008, and the other on May 19, 2008.[5] (Bailey Dep. 42-43, 51-52.) He believes that these two letters to Gallaway, if received, would have changed the outcome of his trial. (Bailey Dep. 51-53, 72, 76.)

At the jail, incoming and outgoing mail is logged by jail officers working in the fourth floor office area. (Lee Aff. ¶ 7; Davis Aff. ¶ 4; Harlan Aff. ¶ 4.) Jail officer Davis was working in the fourth floor office area of the jail on May 7, 2008. (Davis Aff. Ex. 1; Davis Aff. ¶ 4.) The logs on that day show that Davis logged a letter or letters addressed to Gallaway. (Davis Aff. ¶¶ 10, 11, Ex. 1.) The first page of the log shows that the mail had no postage, and thus was sent to Gallaway as a "walk over" to his mail slot at the courthouse.[6] (Davis Aff. ¶ 10.) After outgoing mail is logged, it is brought downstairs for processing, and clerical staff, not jail officers, deliver it to the court. (Lee Aff. ¶ 8.)

The second page of the May 7, 2008, log shows that mail addressed to Gallaway was logged in for return to Bailey. (Davis Aff. ¶ 11.) After returned mail is logged, the second floor officers, not the fourth floor officers, are supposed to deliver it to second floor inmates. (Lee Aff. ¶ 7; Davis Aff. ¶¶ 10, 11.) A record is not usually made of such actual mail delivery to the second floor inmates. (Lee Aff. ¶ 5.) Davis was not working as a second floor jail officer on May 7, 2008, and has no specific recollection of any particular piece of mail sent to Bailey or returned. (Davis Aff. ¶¶ 4, 11; Lee Aff. ¶ 6.) Davis states that he never intentionally interfered with any of Bailey's legal mail, nor was he instructed by anyone to interfere with any of Bailey's legal mail. (Lee Aff. ¶

---

[5] Only one of these letters was ever returned to Bailey and then only after he had left the Grant County Jail. (Bailey Dep. 42-43, 51-52.)

[6] If mail had postage, it would be sent out in the U.S. mail. (Harlan Aff. ¶ 5.) If mail did not have postage, it was considered a "walk over" to be delivered to a particular attorney's mailbox slot at the courthouse. (Davis Aff. ¶ 5; Harlan Aff. ¶ 5.)

4

6; Davis Aff. ¶ 12.) In fact, Bailey conceded at his deposition that he has no knowledge that Davis did anything more than log his letters and has no reason to think that Davis intentionally did anything to interfere with his May 7, 2008, letter. (Bailey Dep. 55.)

On May 19, 2008, jail officer Harlan was working in the fourth floor office area of the jail, logging in the incoming and outgoing mail. (Harlan Aff. ¶ 4; Lee Aff. ¶ 6.) The logs that day show that Harlan logged in mail addressed to Gallaway for return to Bailey. (Harlan Aff. ¶ 10; Lee Aff. ¶ 6.) Harlan, however, was not working as a second floor jail officer on May 19, 2008, and has no specific recollection of any particular piece of mail sent to Bailey or returned. (Harlan Aff. ¶ 4; Lee Aff. ¶ 6.) Harlan states that he never intentionally interfered with any of Bailey's legal mail, nor was he instructed by anyone to interfere with any of Bailey's legal mail. (Harlan Aff. ¶¶ 11, 12.) In fact, Bailey admitted at his deposition that he does not believe that Harlan purposely did anything to interfere with his legal mail. (Bailey Dep. 54-55.)

Bailey filed a grievance about his lost letters with the jail on August 5, 2008. (Compl. 6.) Jail Commander Cathie Lee processed the grievance and, ultimately, was unable to determine what happened to Bailey's mail after it was logged on May 7 and 19, 2008. (Lee Aff. ¶ 5.)

Darrell Himelick is the Sheriff of Grant County, a position he held in 2008. (Himelick Aff ¶ 1.) Bailey alleged in his complaint that he asked Himelick to look into the matter of his missing legal mail but that Himelick never did anything because he "refused to be a snitch for him." (Compl. 4.) Himelick, however, never reviewed or processed a complaint from Bailey, written or oral, concerning his legal mail. (Lee Aff. ¶ 11; Himelick Aff. ¶ 2.) Nor did he make a decision or order, or give instructions, about Bailey's legal mail. (Himelick Aff. ¶¶ 3, 4.) In fact, Bailey conceded at his deposition that he never talked to Himelick while incarcerated at the Grant County

5

Jail. (Bailey Dep. 56.) Until the filing of this lawsuit, Himelick had no knowledge of any issue or complaint pertaining to Bailey's legal mail. (Himelick Aff. ¶ 5.)

Bailey appealed his criminal conviction to the Indiana Court of Appeals. (Defs.' Designation of Evidence Exs. 9-11.) None of his briefs raise the legal mail issue or the eight proposed witnesses. (Defs.' Designation of Evidence Exs. 9-11.)

### C. Bailey Has Abandoned His First Amendment Claims

Because Bailey failed to respond to Defendants' motion for summary judgment, he has abandoned his First Amendment claims. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 n.2 (7th Cir. 1996) (concluding that plaintiff had abandoned claim after failing to respond to defendant's arguments concerning such claim in its motion for summary judgment); *see generally Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (emphasizing that summary judgment "is the 'put up or shut up' moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events" (citations omitted)). Therefore, summary judgment could be granted on that basis alone. *See, e.g.*, *Martinez v. Provena Hosp.*, No. 07 CV 4525, 2008 WL 4924889, at *8 (N.D. Ill. Nov. 12, 2008); *Davis v. Bierman*, No. 01 C 6658, 2004 WL 161523, at *13 (N.D. Ill. Jan. 21, 2004); *see generally Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.").

At a minimum, the facts as articulated by Defendants in their opening brief are admitted to exist without controversy. *Bradley v. Work*, 154 F.3d 704, 707-08 (7th Cir. 1998); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Selan v. Kiley*, 969 F.2d 560, 566 n.8 (7th Cir. 1992) ("[T]he only acts relevant to our review are those that [the plaintiff] brought to the district court's attention—by reference to specific facts in affidavits, depositions, answers to

interrogatories or admissions—in response to the defendants' motion for summary judgment.");
*see generally McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) ("The fact that [the plaintiff] was proceeding *pro se* does not excuse her failure to comply with procedural rules."). It is with this backdrop that the Court will evaluate Bailey's First Amendment claims on the merits. *See generally Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("[I]t is the well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." (internal quotation marks and citations omitted)).

### D. Bailey's Claims Against Individual Defendants Davis and Harlan Fail on the Merits

"[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Therefore, Bailey must show, among other things, that individual Defendants Davis and Harlan were personally involved in the alleged interference with his legal mail.

In that regard, Bailey, "like all prisoners, has a constitutional right of access to the courts; that access must be adequate, effective, and meaningful." *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir. 1990) (citations and internal quotation marks omitted). "[A]n intentional taking of legal materials that results in an interference with a prisoner's access to the courts violates this [right]." *Id.* at 415. However, "when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs." *Romine v. Gaunt*, No. 1:08-cv-8, 2009 WL 952048, at *3 (N.D. Ind. Apr. 7, 2009) (quoting *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005)). That is, the Seventh Circuit Court of Appeals has "made clear that an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts." *Snyder v. Nolan*, 380 F.3d 279, 291 n.11 (7th Cir. 2004). Furthermore, an inmate must also show a causal connection, that is, "that his access to the courts was actually

impeded by the denial of certain legal materials in order to succeed on the merits of his claim." *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987).

On this record, it is undisputed that jail officers Davis and Harlan were working in the fourth floor office of the Grant County Jail on May 7 and 19, 2008, respectively. As a result, their only duty pertaining to Bailey's mail on those days was to log it in or out, which they did. Their duties did *not* include taking outgoing mail to the courthouse or taking incoming, or returned mail, to the second floor. In fact, Bailey testified at his deposition that he has no information that Davis or Harlan did anything other than log his mail and has no reason to believe that Davis or Harlan did anything intentional to interfere with his mail.

As a result, on this record, no reasonable jury could conclude that Davis or Harlan intentionally interfered with Bailey's legal mail. Therefore, Davis and Harlan are entitled to summary judgment on the merits of Bailey's First Amendment claim.

### E. Bailey's Official Capacity Claim Against Sheriff Himelick Fails on the Merits

Bailey also named Sheriff Himelick as a Defendant in this suit. It is undisputed on this record, however, that the Sheriff was not personally involved with Bailey's legal mail, nor did he instruct anyone to interfere with it. Moreover, he did not process Bailey's grievance, as Bailey suggests in his complaint. In fact, Sheriff Himelick knew nothing about Bailey's mail issues until this suit was filed.

Furthermore, "the doctrine of respondeat superior may not be used to fasten liability on a local government in a suit under [S]ection 1983." *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 US 658, 690, 694 (1978)). Rather, under § 1983, a municipality can only be liable for acts taken pursuant to its official policy, statement, ordinance, regulation or decision, or those taken pursuant to a municipal

custom. *Monell*, 436 U.S. at 690-91. Therefore, Sheriff Himelock cannot be liable for the actions of a jail officer simply by virtue of employing that officer.

In any event, a plaintiff must prove that the individual officers are liable on the underlying substantive claim in order to recover damages from the municipality. *See Windle v. City of Marian, Ind.*, 321 F.3d 658, 663 (7th Cir. 2003). Here, however, Bailey has failed to show that he suffered a constitutional violation from the actions of Davis or Harlan, or, for that matter, any other jail officer. Therefore, there can be no official capacity liability on the part of Sheriff Himelick.

And even if there had been a constitutional deprivation by a jail officer, Bailey has not shown that "an official policy or custom caused the injury." *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). That is, Bailey must "point to either an express policy which caused the injury, a widespread practice that is so well-settled as to amount to a policy, or that the [S]heriff had the final policymaking authority for the [treatment of Bailey's legal mail.]" *Id*. Although the jail has written policies for dealing with the inmates' mail, Bailey does not suggest, much less establish, that these policies caused the purported harm that he suffered. *Id*. Nor does he show that a custom or widespread practice caused the alleged harm, as there is no evidence of other constitutional violations by Grant County jail officers with respect to prisoners' mail.[7] *See Palmer*, 327 F.3d at 595. ("[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of [a constitutional violation.]"). Therefore, none of the bases for

---

[7] The jail's written policies for outgoing mail do not contemplate the "walk over" delivery of mail without postage to the courthouse that Defendants describe. Instead, the policies provide: "All mail shall be picked up by the U.S. Postal Service from the control room. No outgoing mail shall be taken outside the facility by any staff member to be mailed or otherwise delivered." (Lee Aff. Ex. 1.) Nevertheless, Bailey does not suggest that the jail's custom or practice to handle mail without postage in this manner caused his alleged constitutional violation. In any event, this is ultimately of no moment because, as stated above, there can be no official capacity liability without an underlying constitutional violation. *Windle*, 321 F.3d at 663.

9

official capacity liability exist here. Clearly, Sheriff Himelick is also entitled to summary judgment as a matter of law.

### *E. Conclusion*

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment (Docket # 75) and DIRECTS the Clerk to enter judgment in favor of Defendants and against Plaintiff.

SO ORDERED.

Entered this 1st day of February, 2012.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge